M. LONGO & SONS, INC. *vs.* ANGELINA IANOTTI.

MARCH 26, 1954.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

O'CONNELL, J. This is an employer's petition to review a preliminary agreement for compensation for total incapacity under the workmen's compensation act, general laws 1938, chapter 300. It was heard *de novo* in the superior court, and from the entry of a final decree therein both parties have prosecuted their appeals to this court.

It appears from the record that on December 1, 1950 respondent, who was employed by petitioner as a packer of spinach, slipped on a wet spot on the cement floor and received an injury described in the preliminary agreement as "Broken right forearm." Under the terms of the agreement she was to receive compensation at the rate of $24.24 per week for the duration of total incapacity.

The findings of fact as set forth in the decree are as follows: "1. That the respondent employee is only partially incapacitated by reason of the injury set out in the workmen's compensation agreement sought to be reviewed. 2. That the chances of improvement from an operation on the respondent employee are still good, which operation is not dangerous to life or limb." The decree also contained the following order: "that the respondent shall submit to an operation to remove the excess calcium at the head of the radius of her right forearm within thirty (30) days, the employee respondent to select the doctor and the hospital, and the petitioner employer shall pay all reasonable expenses incident thereto; but if the respondent employee fails so to do, the petitioner employer may reduce compensation to maximum partial until the respondent employee does so submit."

The petitioner contends that the trial justice erred in that he should have ordered the suspension and forfeiture of *all* payments if respondent did not undergo an operation, rather than to provide that failure to submit to such operation

would result in placing her under maximum partial compensation.

On the other hand respondent contends that there is no legal evidence to sustain the first finding of fact; that the trial justice had no authority in law to enter the order that, unless respondent submitted to the proposed operation, her compensation would be reduced to maximum partial; and that the entry of such order constituted an abuse of discretion and was erroneous in law.

The uncontradicted evidence at the hearing in the superior court was that respondent is at present totally incapacitated. All the medical testimony was to that effect, and in our opinion the first finding of the trial justice is not supported by any legal evidence. That this is so is clear from the following inquiry of the trial justice: "You don't claim she can work in her present condition?" to which counsel for petitioner replied: "No."

The only plausible theory as to how the trial justice reached his conclusion for the first finding is his apparent belief that the employee by her "past unreasonable conduct" in refusing to submit to an operation had continued her incapacity, and that the operation, if it had been performed, would have been successful in reducing such incapacity. Whatever may be the reason for either of these assumptions, we are of the opinion that the first finding is wholly unsupported by any legal evidence and is therefore erroneous as a matter of law.

The respondent's appeal raises the question as to whether the compensation act gives to the trier of the facts power to compel an injured employee to submit to a surgical operation if his compensation is to continue. Generally speaking, we have determined that while the question whether, in the circumstances, such operation is advisable from a medical point of view raises a question of fact, yet the determination of such issue also involves a question of law. *Mancini* v. *Superior Court,* 78 R. I. 373.

In *Jillson* v. *Ross*, 38 R. I. 145, 153, this court said that frequently in petitions under the act the findings by the superior court of the ultimate facts of the controversy will involve and be based upon conclusions of law. See also *Foy* v. *A. D. Juilliard & Co.*, 63 R. I. 233. In *Mancini* v. *Superior Court, supra,* we stated: "From our examination of the cases in other states it is clear that the great if not overwhelming weight of authority is that an employee cannot be compelled to submit to a surgical operation which is dangerous to life or limb, involves extraordinary suffering, and is uncertain as to its *ultimate beneficial result*." (italics ours)

As to the advisability of this operation and its chances of success, Dr. G. Edward Crane, one of petitioner's witnesses, testified that it might give an improvement of 70 per cent. He admitted, however, that if it was not successful and complications occurred, the condition of her arm might be worse after the operation. He stated that he had no present opinion as to her ability to work, if the proposed operation was performed.

Doctor Louis A. Sage, another witness for petitioner, estimated that the chances of success of the operation were "50-50." He stated that such operation was a major one; that if the respondent "is against it I wouldn't advise it"; and that its success depended largely upon the willingness and cooperation of the patient. Referring to the effect of the operation in relieving excessive calcium formation, Dr. Sage in answer to the question "So that if there was an operation the same condition may happen all over again?" replied: "That is perfectly true." He further testified: "If there is infection or an unusual calcium formation, we could have a stiffer elbow than she has now"; and that if she could not flex her arm up tight after the operation she might have *more pain* than she has now.

The respondent testified that both Dr. William V. Hindle and Dr. Edmund B. Curran had advised her against the

proposed operation and that no one had guaranteed its success. Doctor Curran testified vigorously against performing such operation. He expressed the opinion that, if further surgery were to be considered, *three* operations instead of one would be necessary. As to the first, he estimated the chances of improvement as probably 30 per cent, of making her worse 20 per cent, and of an unchanged condition 50 per cent; and that as to the second operation, the chances of improvement and of making respondent worse were 25 per cent each. With reference to this operation he stated: "I would be dead against the second one. So little to gain. Too much to lose."

Speaking of these three operations, Dr. Curran testified: "None of them are particularly good operations. The results of any of them are not too good." He also stated: "The next reason is it would take several operations to do her any good and none of the operations would carry an expectancy of success." No evidence was presented to show that respondent previously had ever been ordered to have the proposed operation performed or that she had disregarded any court order relative thereto.

In the existing circumstances we are of the opinion that the order of the trial justice in requiring the respondent to undergo the serious operation or operations involved was not justified by the evidence presented herein and constituted an abuse of discretion on his part, and that he should have found the respondent to be presently totally instead of only partially incapacitated.

The petitioner's appeal is denied and dismissed. The respondent's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for further proceedings.

*Francis V. Reynolds, Joseph V. Cavanagh, Richard P. McMahon,* for petitioner.

*Isidore Kirshenbaum,* for respondent.